UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STANDARD INSURANCE CO., | CASE NO. C20-1097 MJP |
| Plaintiff, | ORDER GRANTING MOTION TO STAY |
| v. | |
| SEATTLE SCHOOL DISTRICT NO. 1, | |
| Defendant. | |

THIS MATTER comes before the Court on Defendant's Motion to Stay (Dkt. No. 20). Having considered the Motion, the Response (Dkt. No. 23), the Reply (Dkt. No. 25), and all related documents, the Court GRANTS the Motion and STAYS this matter pending resolution of Timothy Lundquist v. Seattle School District No. 1 & Standard Insurance Co., No. 19-2-02607-3 (King Cty. Super. Ct.). Defendant is ORDERED to submit status reports to the Court every three months regarding the progress in that matter, with the first status report due on **March 3, 2020**.

//

//

ORDER GRANTING MOTION TO STAY - 1

**Background**

1. <u>Superior Court Case</u>

This matter stems from a case filed in King County Superior Court by Timothy Lundquist, a longtime teacher for Defendant Seattle School District No. 1 (the "District") against both the District and the Plaintiff here, Standard Insurance Company ("Standard"), who provided long-term disability policies for the District's employees. <u>See</u> <u>Timothy Lundquist v. Seattle School District No. 1 & Standard Insurance Co.</u>, No. 19-2-02607-3 (King Cty. Super. Ct.) (<u>Lundquist</u>). The question in that case is who bears responsibility between the District and Standard for the inadequacy of Mr. Lundquist's disability payments, which he alleges are improperly based on less than his full salary. Specifically, Mr. Lundquist alleges that his benefits calculation should include "Time Responsibility Incentive" (TRI) pay funded by local levies, which made up approximately 30 percent of his income. (Dkt. No. 21, Declaration of Randall Thomsen ("Thomsen Decl."), Ex. B ("<u>Lundquist</u> SAC") ¶¶, 6-14, 23-28.) He contends that the District failed in its duty to make sure its employees receive long-term disability benefits based on their full salaries and Standard failed to fulfil its obligations by making full benefit payments under the terms of the policy. (<u>Id.</u> ¶¶ 24, 28). A class of similarly situated teachers has been certified in Mr. Lundquist's suit against the District. (<u>Id.</u> ¶ 36.)

On May 31, 2019 the District moved for summary judgment, arguing that Mr. Lundquist's claims should be dismissed because he failed to exhaust his administrative remedies under the collective bargaining agreement between the District and the teachers' union. (Dkt. No. 24, Declaration of Jordan S. Altura ("Altura Decl."), ¶ 5.) The trial court denied the motion and the District appealed. (Dkt. No. 23 at 6; Altura Decl., Ex. C.) The proceedings were stayed pending appeal until October 16, 2020, when the Court of Appeals lifted the stay as to Standard,

"separating or bifurcating" Mr. Lundquist's claims against Standard from his claims against the District, which remain stayed pending appeal.  (Dkt. No. 26, Second Declaration of Randall Thomsen ("2d. Thomsen Decl.", Ex. E.)  On November 6, 2020 Standard removed the bifurcated Lundquist action to this Court.  See Lundquist v. Standard Insurance Co., Case No. C20-1644 MJP.

    2.  The Instant Action

Standard filed this lawsuit against the District on July 15, 2020, six days after Mr. Lundquist sought leave to amend his Complaint to add Standard as a defendant in the Superior Court case.  (Dkt. No. 1; Thomsen Decl., Ex. C.)  Standard seeks a judicial declaration that TRI Pay is not included in the Policy's calculation of the long-term disability benefits for which a District employee may be eligible (Dkt. No. 14, ("FAC"), ¶¶ 4.1-4.11), an injunction prohibiting the District from withdrawing funds from the premium deposit account where the Parties make deposits used for refunds (Id., ¶¶ 5.1-5.10), a judicial declaration that Standard is not obligated to hold the District harmless with respect to the claims asserted against the District by Mr. Lundquist and other members of the class (Id., ¶¶ 7.1-7.17), and damages for breach of contract (Id., ¶¶ 6.1-6.8).

The District now moves to stay this matter pending resolution of the Lundquist action under the doctrine set forth in Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), or, in the alternative, under Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). (Dkt. No. 20.)

**Discussion**

A district court has discretionary power to stay proceedings before it.  Lockyer v. Mirant Corp., 398 F.3d 1098, 1109 (9th Cir.2005).  This power to stay is "incidental to the power

1  inherent in every court to control the disposition of the causes on its docket with economy of

2  time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 254.

3          As an initial matter, while the Parties appear to agree that the Court can apply either the

4  Colorado River doctrine or the Landis standards in analyzing Defendant's Motion, (Dkt. Nos. 20

5  at 4-12; 23 at 7-16), these standards are not interchangeable. See, e.g., Cottrell v. Duke, 737

6  F.3d 1238, 1248 (8th Cir.2013) ("Though these powers [under Colorado River and Landis]

7  coexist, they are different and cannot be used, as they were here, as alternative methods for

8  accomplishing an identical result."). The Colorado River standard is more restrictive, as it

9  includes the imposing requirement that the movant demonstrate that "exceptional circumstances"

10  justify a stay. See Fishman Jackson PLLC v. Israely, 180 F. Supp. 3d 476, 481-87 (N.D. Tex.

11  2016) (providing an extended comparison between the Landis and Colorado River standards).

12  Because it is in keeping with the practice of this district in analogous cases involving concurrent

13  state court proceedings, the Court will analyze Defendant's motion under the broader Landis

14  standard. See, e.g., Liberty Mut. Ins. Co. v. Frank Coluccio Constr. Co. Inc., No. C19-1652

15  MJP, 2019 WL 6913481, at *1 (W.D. Wash. Dec. 19, 2019); Ten Bridges, LLC v. Midas

16  Mulligan, LLC, No. C19-1237JLR, 2020 WL 5569783, at *2 (W.D. Wash. Sept. 16, 2020); Fed.

17  Ins. Co. v. Holmes Weddle & Barcott P.C., No. C13-0926JLR, 2013 WL 6038965, at *2 (W.D.

18  Wash. Nov. 14, 2013), order clarified, No. C13-0926JLR, 2013 WL 12173327 (W.D. Wash.

19  Nov. 20, 2013); Midmoutain Contractors, Inc. v. Am. Safety Indem. Co., No. C10-1239JLR,

20  2012 WL 12882004, at *2 (W.D. Wash. Apr. 26, 2012).

21          In determining whether a Landis stay is appropriate, the Court weighs three factors: (1)

22  the possible damage which may result from the granting of a stay, (2) the hardship or inequity

23  which a party may suffer in being required to go forward, and (3) the orderly course of justice

24

1   measured in terms of the simplifying or complicating of issues, proof, and questions of law

2   which could be expected to result from a stay.  Landis, 299 U.S. at 254; CMAX, Inc. v. Hall, 300

3   F.2d 265, 268 (9th Cir. 1962).  "The proponent of a stay bears the burden of establishing its

4   need."  Clinton v. Jones, 520 U.S. 681, 708 (1997).  In this case, the Court finds that all these

5   factors weigh in favor of a stay of these proceedings pending resolution of the state action.

6       **A.  Hardship Resulting from a Stay**

7           Standard makes no showing of harm here, arguing only that without swift declaratory

8   judgment from this Court it will be unable to "continue properly administering the Policy."

9   (Dkt. No. 23 at 15.)  But as the District notes, as of December 31, 2019, the School Employees

10  Benefits Board of the State's Health Care Authority administers long-term disability insurance

11  for all Washington school employees, not Standard.  See RCW 41.05.740-.745; (Dkt. No. 25 at

12  5-6.)  The Court's decision to stay this matter would therefore have no effect on Standard's

13  administration of the Policy and Standard cites no other harm.

14      **B.  Hardship in the Absence of a Stay**

15          The Court finds that the District is likely to suffer hardship in the absence of a stay.  To

16  begin, the Court cannot evaluate Standard's allegations and requests for relief here without

17  improperly affecting the outcome in Lundquist.  Holmes Weddle, 2014 WL 358419, at *4

18  ("Indeed, it is improper for a court to proceed with a coverage action if doing so means finding

19  material facts that could interfere with a parallel liability action.")  For example, Standard alleges

20  that the Policy is based on the mutual understanding between Standard and the District that TRI

21  Pay was not a form of remuneration paid to District employees at the time of the Policy's

22  inception.  (FAC, ¶ 1.6.)  Standard therefore seeks a declaration that "TRI Pay is not included

23  within an employee's 'insured earnings' as defined by the Policy and that TRI Pay is not

24

**ORDER GRANTING MOTION TO STAY** - 5

1    included in the calculation of the LTD Benefit for which a District employee may be eligible."

2    (Id., ¶ 1.8.)  If the Court finds that Standard is correct, the District would be prejudiced in the

3    Lundquist action.

4           Further, if the District is successful in its Lundquist appeal, the issues here may be

5    significantly narrowed.  Any efforts the District expends in defending potentially moot issues in

6    this action would constitute an unnecessary burden that could be avoided by a stay.

7           **C.  Orderly Course of Justice**

8           The issuance of a stay in this matter would also avoid conflicting rulings on identical or

9    related issues and will simplify both the legal questions and matters of proof at the federal level.

10   While Standard frames this matter as distinct from Lundquist "because Standard's claim for

11   declaratory judgment involves a question of law for this Court based on negotiations and the

12   intent of Defendant in obtaining the Policy," both the Lundquist court and this Court are asked to

13   determine the relative liability of Standard and the District.  (Dkt. No. 23 at 10; Dkt. No. 25 at 4;

14   FAC, ¶¶ 1.6, 1.8.)  The proceedings before this Court and before the state court, therefore, "will

15   likely rely on the same insurance contract, the same accompanying documents, and . . . [t]he

16   state court proceedings will likely address the same issue of the parties' obligations under the

17   insurance policy. Therefore, the risk of inconsistent results is significant." Essex Ins. Co. v. Kut

18   Sui, No. 3:12-CV-5773 RJB, 2012 WL 5258858, at *4 (W.D. Wash. Oct. 23, 2012).

19          **D.  Additional Factors**

20          Standard argues that the Court must evaluate two additional factors under its Landis

21   analysis: whether it appears "likely the other proceedings will be concluded within a reasonable

22   time," and second, "whether the party opposing the stay seeks only damages versus injunctive or

23   declaratory relief."  (Dkt. No. 23 at 14 (citing Trotsky v. Travelers Indem. Co., No. C11-2144-

24

1    JCC, 2013 WL 12116152, at *2 (W.D. Wash. Apr. 5, 2013)).)  As the District notes, these

2    additional factors have not been used in several years by courts in this district.  See, e.g., Liberty

3    Mut. 2019 WL 6913481 (applying only the first three Landis factors above); Ten Bridges, 2020

4    WL 5569783 (same).  Neither do the cases Standard cites lend much support to its position.  In

5    Link v. Am. Fam. Mut. Ins. Co., for example, the court found that because "the Washington

6    Court of Appeals is fully briefed and ready to consider the appeal," as here, "the matter will be

7    resolved in a reasonable time."  No. 2:16-CV-01117-RAJ, 2017 WL 1838142, at *2 (W.D.

8    Wash. May 8, 2017).

9          Ultimately, the additional factors are permissive, and do not overcome the balance of

10   potential harm discussed above.  See, e.g., Trotsky, 2013 WL 12116152, at *2 (citing Lockyer,

11   398 F.3d at 1109) ("courts more appropriately enter stay orders where a party seeks only

12   damages, does not allege continuing harm, and does not seek injunctive or declaratory relief

13   since a stay would result only in a delay in monetary recovery.") (emphasis added).  The Court

14   therefore concludes that the Landis factors weigh in favor of a stay.

**Conclusion**

16         In sum, the Court finds that the District will suffer hardship should this matter proceed

17   concurrently with the Superior Court Lundquist action.  The District's Motion to Stay is

18   therefore GRANTED and this matter is STAYED pending resolution of the Lundquist matter.

19   The District is ORDERED to update the Court on the progress of Lundquist every three months,

20   with the first such status update due **March 3, 2021**.

21   //

22   //

23   //

24

**ORDER GRANTING MOTION TO STAY - 7**

The clerk is ordered to provide copies of this order to all counsel.

Dated December 4, 2020.

Marsha J. Pechman
United States Senior District Judge